(82 South. 722)

No. 23496.

FLANIGAN et al. v. POLICE JURY OF JACKSON PARISH.

(June 2, 1919.   On Rehearing, June 30, 1919.)

*(Syllabus by Editorial Staff.)*

1. HIGHWAYS ☞90 — DISTRICTS — POLICE JURY—PARISH.

Under Act No. 30, Ex. Sess. of 1917, § 2, and under Const. art. 291, police jury of parish may create road district to embrace the whole of the parish.

2. TAXATION ☞347 — ASSESSMENT VALUATION—LOCAL PURPOSES.

Under Const. arts. 225, 226, and 281, and under Act No. 140 of 1916, §§ 10 and 13, as amended by Act No. 211 of 1918, the cash value fixed by board of state affairs for state assessment purposes shall be the actual cash value for all assessment purposes both local and state.

On Rehearing.

3. HIGHWAYS ☞121—ROAD DISTRICT—STATUS.

The board of supervisors or agency governing a road district is an independent corporation, and is empowered to levy its taxes according to whatever is necessary to meet the principal and interest of the bonds issued by it.

4. TAXATION ☞309 — "ASSESS" — "ASSESSMENT."

The words "assess" and "assessment" have a broad or narrow meaning according to the sense or connection in which they are used, meaning, at times, the listing and valuing of property, and at other times including the calculation of the rate and amount of taxes thereon.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Assess; Assessment.]

5. TAXATION ☞52 — LOCAL ASSESSMENT — CONSTITUTIONAL LIMITATION — "ASSESSED VALUATION."

The term "assessed valuation" within Const. art. 281, prohibiting subdivision of state from imposing special tax for purpose of meeting principal and interest due on bonds in excess of "ten mills on the dollar of assessed valuation of the property in such subdivisions," is not the amount to be paid by taxpayers, but the listing and valuing of the property as a basis upon which taxes are to be collected.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Assessed Value.]

Monroe, C. J., and O'Niell, J., dissenting.

Appeal from Fifth Judicial District Court, Parish of Jackson; Cas Moss, Judge.

Action by W. I. Flanigan and others against the Police Jury of Jackson Parish. Judgment for defendant, and plaintiffs appeal. Affirmed.

Wm. J. Hammon, of Jonesboro, for appellants.

Julius T. Long, of Winnfield, and Thos. E. Furlow, of New Orleans, for appellee.

Harry Gamble and Lewis R. Graham, both of New Orleans (Graham & Martin, of New Orleans, of counsel), amici curiæ.

SOMMERVILLE, J. Plaintiffs allege that an ordinance of the police jury of Jackson parish dated January 22, 1919, declaring the whole territory of Jackson parish to be included in road district No. 1, is null, and that a certain election held on March 4, 1919, in said parish, authorizing the issuance of one-half million dollars in bonds to run for 40 years, for the purpose of public road building, and the promulgation of the results of said election, are also null.

The petition contains only two objections to the proceedings of the police jury and the election. And the suit is apparently brought for the purpose of testing the validity of those proceedings to the extent indicated, and no further. The petition was filed April 9, 1919, and was put at issue by answer filed April 11, 1919. The answer admitted all of the allegations of the petition; the trial was had without the offer of any evidence whatever; judgment was rendered in favor of defendant; and an appeal was taken by plaintiffs—all on the same day. The appeal was made returnable in this court on April 28, 1919, and the transcript was filed April 21, 1919. The case was advanced in this court and submitted on briefs and without oral argument May 5, 1919.

The case is important, as the amount involved is large, and the validity of the bonds to be issued is questioned, and doubtless the same points are to be solved in other parishes which are engaged in road building at this time.

[1] The attack on the ordinance constituting all the territory in the parish of Jackson as road district No. 1 of the parish is without merit. The law provides, in section 2, Act No. 30 of 1917, Ex. Sess. p. 45:

"That the police juries of the various parishes of this state are empowered and authorized upon their own initiative to divide their parishes into one or more road districts, such districts to be known by numerical designation as follows: Road district No. (here insert the number) of the parish (here insert the name of the parish)," etc.

The act makes it clear that the whole parish may be made to constitute one road district. So also does the Constitution in article 291, when it provides that "the police juries of this state may form their respective parishes into road districts." The word "divide" is not used in the Constitution.

Counsel for plaintiffs say that:

"We do not argue that it was necessary for the police jury to create more than one road district in order that their act be legal, but we do submit that in order that they divide their parish it was and is necessary that some portion of the parish be left out of the district in order that there could be more than one district."

We fail to appreciate the argument, in view of the law which says that police juries are empowered and authorized to divide their parishes into one or more road districts, or to "form" their respective parishes into road districts.

The objection to the promulgation of the returns of the election which authorized the issuance of one-half million dollars for bonds for road building is more serious. The allegation in the petition which is admitted by the defendant is that, while the valuation of the property in the road district was $6,208,174, as listed by the tax assessor of the parish for the year 1918, the assessed valuation on which taxes were actually levied and collected on the property in said road district was 50 per cent. of said cash valuation, or the sum of $3,104,087, and that one-half million dollars is in excess of 10 per cent. of the assessed valuation of the property in the subdivision in which the tax for road purposes is levied.

Originally article 225 of the Constitution of 1898 provided that taxation should be equal and uniform throughout the territorial limits of the authority levying the tax; that the assessment of all property should never exceed the actual cash value thereof; and that the valuations put upon property for the purposes of state taxation should be taken as the proper valuation for purposes of local taxation in every subdivision of the state. And article 281 provided for the issuance of bonds by municipal corporations, parishes, and drainage districts to pay for public improvements, including streets, roads, alleys, etc., and that the total issue of bonds by any municipality, parish, or drainage district for all purposes should not exceed "one-tenth of assessed valuation of the property within such municipal, parish, or drainage district, as shown by the last assessment."

It was at that time, in 1898, easily determined whether the bonds authorized to be issued were in excess of 10 per cent. of the assessed value of the property in the subdivision levying the tax and issuing the bonds; for there was but one assessment roll, and the assessment could not exceed the actual cash value of property subject to be taxed. But articles 225, 226, and 281 have been amended; and the assessment roll thereunder for state taxation may be one thing, and the assessment rolls for parochial, municipal, and local purposes may be a different one.

Article 226 of the Constitution, as amended, is as follows:

"There shall be and is hereby created a board of state affairs whose duty it shall be to assess, for state purposes, all taxable property throughout the state of Louisiana. It shall have such other authority relative to state assessment, budget, income and expenditure as may be conferred upon it by the General Assembly," etc.

The Legislature, by Act No. 140, 1916, p. 330, undertook to carry out articles 225 and 226 as amended, and provided for a board of state affairs, and assigned to it certain duties. The act was amended in 1918 by Act No. 211, p. 388, by providing in part:

"That it shall be the duty of the board, and it shall have the power and authority: * * *

"1. To assess, for state purposes, all taxable property throughout the state of Louisiana, as authorized and required by articles 225 and 226 of the Constitution.

"2. To fix and equalize the value of said property for the purpose of collecting the state taxes, not to exceed its actual cash value; leaving to the lawful authorities of each parish or other subdivision levying, assessing and collecting taxes, full liberty to assess taxes on, and fix valuations at, less than actual cash valuation as they deem fit: Provided that the percentage of the cash valuation of the property assessed in any parish, or for other than state purposes, shall not fall below twenty-five per cent. of the actual cash valuation, as fixed by the board for state purposes: Provided, further, that for local purposes the percentage shall operate equally and uniformly on all taxable property within the parish or other local subdivision on the actual valuation fixed by the board of state affairs for state assessment purposes. * * * *"

And section 13 of Act No. 140 of 1916 was amended so as to read as follows:

"That the actual cash value of all property fixed by the board of state affairs for state assessment purposes shall be the actual cash value for all purposes." Acts 1918, p. 392.

[2] It would thus appear, while the Constitution authorizes different assessments for taxing purposes in the state and in the subdivisions of the state, that the Legislature has provided that the cash value fixed by the board of state affairs for state assessment purposes shall be the actual cash value for all purposes.

The petition states and the answer admits that, while the cash valuation of all property in the parish of Jackson was $6,208,174, the assessed valuation of property in the parish on which taxes were actually levied and collected for state purposes was only 50 per cent. of that amount, or $3,104,087. And

plaintiffs argue that the total issue of bonds of one-half million dollars by road district No. 1 exceeds 10 per cent. of this last amount, or "the assessed valuation of the property in such subdivision," as limited in article 281 of the Constitution, as amended, and as it appears in the Constitution of 1913. And the reduced amount is the "assessed valuation" of property which may be fixed as the basis for issuing bonds for road building by the police jury of Jackson parish.

As the issue of the half million dollars of bonds for building roads in Jackson parish exceeds 10 per cent. of the assessed valuation of the property in that parish, as fixed by the state board of affairs for state assessment purposes, the action of the police jury and the election held thereunder are illegal.

The rate of taxation is not mentioned in the pleadings or in evidence. The invalidity thereof is not complained of, and it is not passed upon herein.

The judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of plaintiffs against defendant as prayed for, with costs in both courts.

### On Rehearing.

DAWKINS, J. Plaintiffs and defendant have joined in a stipulation agreeing that this case may be considered as on rehearing and a final decree rendered in event we decide to reverse or change in any manner our former finding. This was done, we are informed, not alone because of the importance of a speedy disposition in the present case, but because of the fact that several other districts of the state have voted bonds for roadbuilding upon the same basis, and, in order to avail themselves of the annual allotments of federal aid, they must have their own funds available when the government distribution is made.

Defendant has pointed out in brief what it claims to be errors of law in our former opinion, the following, to wit:

(1) Holding that the valuation fixed by the board of state affairs should be adopted as the basis for issuing bonds for purposes of local improvement;

(2) Holding that the limitation of article 281 of the Constitution prohibiting the issuance of bonds in excess of 10 per cent. of "assessed valuation" means the total sum produced by taking the percentage of cash value adopted for other purposes, instead of the actual cash value found by the local assessing authorities;

(3) Holding that the percentage of valuation prevailing at the time of the tax election should govern, instead of that existing when the bonds are issued and indebtedness incurred; and

(4) Holding the entire proceedings null, instead of scaling down the amount of bonds to be issued to 10 per cent. of the value found.

The articles of the Constitution dealing with assessments were amended by the people in 1916 so as to read as follows:

"Art. 225. Taxation shall be equal and uniform throughout the territorial limits of the authority levying the tax, and property shall be taxed in a manner directed by law: Provided that the valuation of property for the assessment of state taxes, levied by the General Assembly and by this Constitution, may be different from the valuation fixed for all other purposes: Provided, further, the assessment of all property shall never exceed the actual cash value thereof: And, provided, further, that the taxpayers shall have the right of testing the correctness of their assessments before the courts of justice.

"Art. 226. There shall be and is hereby created a board of state affairs whose duty it shall be to assess, for state purposes, all taxable property throughout the state of Louisiana. It shall have such other authority relative to state assessment, budget, income and expenditure as may be conferred upon it by the General Assembly. The said board shall be composed of three members, who shall be appoint-

ed by the Governor for such terms as may be fixed by the General Assembly. The board shall enter upon its duties on January 1, 1917. The General Assembly shall have full authority to define the powers and duties of the board and to fix the salaries of the members thereof. Act No. 140, of the General Assembly for the year 1916, on this subject-matter, shall go into effect as a statute of the state, on the first day of January, 1917."

The effect of the amendments to the articles quoted (as amended) was, first, to empower the Legislature to segregate state assessments from those "for all other purposes," and to vest in the board of state affairs (as created by Act No. 140 of 1916) exclusive authority in the matter of state assessments, subject to the right of the General Assembly to "define the powers and duties of the board and to fix the salaries of the members thereof."

At the same election in which these amendments were adopted the people ratified the provisions of the said Act No. 140 of 1916 on the subject of assessments, section 10 of which reads as follows:

"Sec. 10. Be it further enacted, etc., that it shall be the duty of the board, and it shall have the power and authority:

### "Assessment.

"1. To assess, for state purposes, all taxable property throughout the state of Louisiana, as authorized and required by articles 225 and 226 of the Constitution.

"2. To fix and equalize the value of said property for the purpose of collecting the state taxes, not to exceed its actual cash value; *leaving to the lawful authorities of each parish or other subdivision levying, assessing and collecting taxes, full liberty to assess taxes on, and fix valuation at, less than actual cash valuation as they deem fit: Provided that the percentage of the actual cash valuation of property assessed in any parish, for other than state purposes, shall not fall below twenty-five per cent. of the actual cash valuation, as fixed by the board for state purposes: Provided, further, that for local purposes the percentage shall operate equally and uniformly on all taxable property within the parish on the actual valuation adopted for assessment purposes:*

Provided, further, that the actual cash valuation and assessment of railway, telegraph, telephone, sleeping car and express business throughout the state of Louisiana, or other property heretofore assessed by the state board of appraisers, shall be fixed and assessed by this board for all purposes."

In 1918 the Legislature amended the section of the act of 1916 just quoted (Act No. 211 of 1918) so as to make the last clause above italicized read as follows:

"Provided further, that for local purposes the percentage shall operate equally and uniformly on all taxable property within the parish *or other local subdivision* on the actual valuation *fixed by the board of state affairs for state assessment purposes.*"

If the changes made, as indicated by the words italicized in the quotation just preceding this sentence, are valid, then the Legislature has taken away from all local subdivisions the power to fix the value of property, and left only the right to adopt for local purposes a percentage of that value.

The power of enacting legislation with respect to assessment and taxation is unquestionably in the Legislature, subject only to the limitations found in the Constitution. The articles above quoted do not attempt to fix a rule with reference to assessments for local purposes, but merely to permit the Legislature to separate them from those of the state as indicated by the use of the expression that valuations for state purposes "may be different from valuations fixed for all other purposes." So that the General Assembly, if it sees fit, has the right to say that all subdivisions of the state shall use the same actual value as found by the board of state affairs; for it must be held that, in ratifying the provisions of Act No. 140 of 1916, the people did not intend to make that statute superior to the terms of the very articles 225 and 226 of the Constitution, which they were amending, but only recognized it as a legitimate exercise by the Legislature of

its powers, dependent upon the amendment of the organic law.

It results, therefore, that the clause of section 1 of Act No. 211 of 1918, amending section 10 of Act No. 140 of 1916, last above quoted is the controlling authority for fixing the actual value of property for all assessment purposes, both state and local.

### Assessed Valuation.

The second assignment of errors touches the all-important issue in this case as to what is meant by "assessed valuation" in article 281 of the Constitution.

As pointed out in our original opinion, when that limitation was written into the organic law, there was and could be no question as to what was meant; for there was only one assessment for all purposes. It becomes our duty, therefore, to construe that term, which still remains a part of the Constitution, in its application and effect upon the amendments to articles 225 and 226 and the statutes of the Legislature covering assessments, and in the light of the conditions produced thereby.

Of course, it is well understood that such limitations in the Constitution were intended, in large measure, to protect the minority of the people against abuses which might arise through ill-considered and precipitate action of a temporary majority; and it was necessary that some fixed basis should be found upon which to rest this limitation; since otherwise it would depend too much upon the caprice of those authorities who were charged with the handling of tax proceedings and the fixing of values. It was doubtless considered that, if the assessed value were used, any inflation or depression would so affect all other taxes, both state and local, that the motive for discrimination would be reduced to a minimum. Besides, inasmuch as both the statute law and the Constitution had enjoined upon the assessing officials the duty of assessing property at its actual value, this would come nearer producing a uniform basis for the incurring of debt and issuing of bonds than could be had, under the circumstances, in any other way. The idea of a definite and fixed basis was thereby attained.

However, under the amendments and statutes above discussed, all property is required to be valued on the assessment rolls at its actual value, and the state and local authorities are permitted to adopt a percentage of that value, as the base upon which to levy taxes, according to their respective needs, with a minimum limitation of 25 per cent., and with maximum limitations as to rate and millage, as provided in the Constitution. In this way the old impediment to assessing property in one parish at its actual value, when others were using a less value, due to an unwillingness to pay a larger pro rata of state taxes, was largely removed. Since the local authorities may now adopt either a low percentage and a high rate or a high percentage and a low rate at pleasure, and as the local needs may require, without affecting the state tax, the whole matter will be governed largely by the financial condition and local desires of the people with respect to public improvements. The results will be as varied as the circumstances of the different localities, but the actual valuation will be as nearly uniform throughout the state, under the supervision of the board of state affairs, we assume, as will be possible to make it.

[3] It will be noted that not only are the parishes, through the police juries, permitted to adopt their own percentage of actual value for parochial purposes, but "the lawful authorities of * * * other subdivisions, levying, assessing, and collecting taxes" are given "full liberty to assess taxes on and fix valuations at less than actual cash valuation as they deem fit." This, of course, with the modification made in act No. 211 of 1918 re-

quiring the actual value fixed by the board of state affairs to be used for all purposes as the basis for calculation. It might well happen that the state and parish would adopt different percentages of value, and under such circumstances, if the percentage for collecting taxes were held to be the "assessed valuation," which should control, that of the state or parish? It just so happens that in the present case the road district is coextensive with the limits of the parish; but it is a well-known fact that many road districts have been created which take in only a part of a parish. The board of supervisors or agency governing a road district is an independent corporation, and is empowered to levy its taxes according to whatever is necessary to meet the principal and interest of the bonds issued by it as the same annually mature. Is there any more reason for saying that they should take the percentage of value used by the police jury than there is for that of the state?

[4, 5] As heretofore indicated, the limitation upon the issuance of bonds having been written into the Constitution at a time when such a situation could not arise, no assistance is to be had in the interpretation from the context of the article itself, and we are driven at last to adopt that meaning which is most in keeping with reason and common sense under all of the circumstances. The words "assess" and "assessment" have a broad or narrow meaning according to the sense or connection in which they are used. Sometimes they mean a listing and valuing of property, while at others they include the calculation of the rate and amount of taxes thereon. In the present case we believe that by "assessed valuation" the framers of the Constitution meant only the listing and valuing of the property as a basis upon which taxes were to be collected, and that they did not intend to include in that term the further process of the calculation of the amount to be paid by the taxpayers. In other words,

the value written into the roll by the assessor to represent the property, and the one factor in the process of taxation which remains constant for all purposes, save to the extent that it may be modified by the police jury as a board of reviewers, or by the board of state affairs, in the exercise of its powers of review, is the actual value fixed by the board. The proceedings from the assessor to the board are but steps in the reaching or fixing of that assessed valuation. When the roll and valuation is thus completed, each subdivision sits down to calculate its alimony according to its needs. The actual value used is the same for all, and, we think, the true assessed value within the meaning of article 281 of the Constitution. Halsey v. Belle Plaine, 128 Iowa, 467, 104 N. W. 494.

It has been argued that, if the governing authorities of road districts were allowed to issue bonds upon the basis of the actual value fixed by the board of state affairs, and police juries did not see fit to adopt a percentage sufficiently high to realize enough to pay the principal and interest, the bonds could not be paid. The same would be true if, after the bonds were issued, they saw fit to reduce the percentage sufficiently to produce that result. The answer would seem to be that, when any subdivision once issues its bonds and they become outstanding obligations in the hands of bona fide holders for value, the governing authorities of such subdivision would be compelled to levy and collect through mandamus proceedings, and the taxpayers could be compelled to pay a sufficient amount to meet such indebtedness. Should the needs for other local purposes be small the percentage of value could be raised and the millage lowered, so that a high valuation for the bonded indebtedness would not necessarily mean a high one for other purposes.

We find it unnecessary to discuss the other issues.

For the reasons assigned, it is ordered, ad-

judged, and decreed that our former judgment be, and the same is hereby, set aside, and it is now ordered and decreed that the judgment of the lower court be, and the same is hereby, affirmed at the cost of the appellant.

MONROE, C. J., dissents, adhering to the views expressed in Hayne v. Assessor, 143 La. 697, 79 South. 280.

O'NIELL, J., dissents, being of the opinion that the police jury has authority to issue bonds for works of public improvements (including roads and bridges) to the extent of one-tenth of the total cash value of the property to be taxed only when the property is assessed at its full value, which, in effect, is the opinion heretofore rendered herein by this court.