(Nos. 6000, 6001.   July 20, 1934.)

McGOLDRICK LUMBER COMPANY, a Corporation, Appellant, v. BENEWAH COUNTY and A. R. CARMAN, Assessor, Benewah County, Idaho, Respondents and Cross-Appellants.

[35 Pac. (2d) 659.]

Wm. D. Keeton, for Appellant.

Ed. S. Elder, for Respondents and Cross-Appellants.

706

GIVENS, J.—The McGoldrick Lumber Company petitioned the board of county commissioners of Benewah county, sitting as a board of equalization, to reduce the assessments on certain lands and property belonging to the company. The board made reductions on some lands, but no increases, the lumber company thereupon appealed to the district court, because all reductions were not allowed as requested, which court upon a hearing anew, both reduced and increased appellant's assessments.

The lumber company appealed from that portion of the judgment which increased the assessments, on the grounds that no notice had been given by the board portending such increase as required by section 61-409, I. C. A.; that the board had not asked the district court for any increase and that no findings were made sufficient to justify either the increase or the refusal to reduce the assessments originally complained of as too high.

The county likewise appealed on the grounds that no appeal lies from the district court to this court in such proceedings and that the statute authorizing an appeal to the district court from the board is unconstitutional, and that

if those points be not well taken the only issue was one of overassessment.

■■ *First Nat. Bank v. Board of Commrs.*, 40 Ida. 391, 232 Pac. 905, held the statute providing for an appeal as herein valid, and an examination of the authorities discloses that such is the majority rule. (See the cases reported and cited in *Silven v. Osage County Commrs.*, 76 Kan. 687, 92 Pac. 604, 14 Ann. Cas. 163, 13 L. R. A., N. S., 716, 14 Am. and Eng. Ann. Cases, 163, and *Hopper v. Oklahoma County*, 43 Okl. 288, 143 Pac. 4, L. R. A. 1915B, 875.)

It is, however, contended that on appeal from the board of county commissioners sitting as a board of equalization the court may not by way of modification in effect make an assessment, that the court may only reverse or affirm, on the theory that the assessment of property for taxation purposes is under the Constitution the exclusive function of the executive, which power may not thus be usurped by the judiciary because of section 1, article 2:

"The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

This proposition must, and apparently is considered to rest upon the major premise that assessing (that is for taxation purposes) is by the Constitution made exclusively an executive function.

Article 2 of the Constitution, merely declares the three governmental divisions or departments, and says nothing about assessment for taxation purposes being in any one of the departments.

A careful examination of the Constitution discloses that the only sections thereof referring to the matter of taxation are found in article 7. Section 6 of article 18, provides for the election of the county assessor, but does not prescribe his duties nor does any other section of article 18, and no pro-

visions of article 7, provide who shall assess the property for taxation purposes, the whole matter being left to the legislature under sections 2 and 5 of article 7.

Section 12 of article 7, provides that the county commissioners shall constitute a board of equalization for their respective counties *"under such rules and regulations as shall be prescribed by law."* (Italics ours.)

Section 20 of article 5, provides as follows:

"The district court shall have original jurisdiction in all cases, both at law and in equity, and *such appellate jurisdiction as may be conferred by law."* (Italics ours.)

The legislature under section 12 of article 7, and section 20 of article 5, has provided first, for the county commissioners to act as a board of equalization, section 61–401, I. C. A., and that an appeal may be taken therefrom, section 61–1910, I. C. A., and that on such appeal the court may reverse, affirm or *modify,* and as is indicated hereafter the word *modify* may include increasing or decreasing. (Italics ours.)

It is rather axiomatic that under our Constitution unless legislation is prohibited the legislature has unlimited power in its field. Not only has the Constitution not prohibited the legislature, but it has expressly authorized it to make rules and regulations for the county boards of equalization and also to define the scope of appeals to the district court (*Knox v. L. N. Dantzler Lumber Co.,* 148 Miss. 834, 114 So. 873, 876), and it will be noted that section 1, article 1, of the Mississippi Constitution is similar to section 1, article 2, of the Idaho Constitution, and section 156, article 6, of the Mississippi Constitution is similar to section 20, article 5, of the Idaho Constitution.

The board of county commissioners sitting as a board of equalization and the district court on appeal from their action are not by the statutes hereafter considered and elucidated assessing the property, but are equalizing it, therefore the statute providing for the appeal herein is not unconstitutional (*In re Westlake Ave.,* 40 Wash. 144, 82 Pac. 279; *City of Seattle v. Seattle & M. R. Co.,* 50 Wash. 132, 96 Pac. 58; *In re Western Union Tel. Co.,* 29 Okl. 483,

118 Pac. 376; *In re Assessment of Osage & Oklahoma Gas Co.*, 35 Okl. 154, 128 Pac. 692; *Williams v. Garfield Exchange Bank*, 38 Okl. 539, 134 Pac. 863; *Mellon Co. v. McCafferty*, 38 Okl. 534, 135 Pac. 278; *Hopper v. Oklahoma County*, 43 Okl. 288, 143 Pac. 4, L. R. A. 1915B, 875; *Winton Lumber Co. v. Kootenai County*, 53 Ida. 539, 26 Pac. (2d) 124; *Stanley v. Board of Supervisors*, 121 U. S. 535, 7 Sup. Ct. 1234, 30 L. ed. 1000), for two reasons, first, because as indicated above, the Constitution has not placed the assessment of property for taxation purposes in the assessor at all, and has left the legislature to prescribe the regulations governing the procedure by the county equalization board, and one of the regulations so prescribed by the legislature, empowered by the court is that an appeal may be taken and the board's determination modified by the district court, in the exercise of its appellate jurisdiction (61 C. J. 789 and 806), and second, the legislature has evidently considered, and there is basis for considering that a distinction exists between "assessing" and "equalizing." (*People v. Orvis*, 301 Ill. 350, 133 N. E. 787, 24 A. L. R. 325; *School Dist. No. 4 v. First Wisconsin Co.*, 187 Wis. 150, 203 N. W. 939; *Trask v. Skoog*, 138 Minn. 229, 164 N. W. 914; *Flanigan v. Police Jury*, 145 La. 613, 82 So. 722; 5 C. J. 816; 61 C. J. 618 and 740.)

Appellant contends that upon appeal the district court could not increase the assessments, no notice having been given as required by section 61–409, I. C. A. Statutes requiring such notice are generally held mandatory. (See cases cited: 24 A. L. R. 346, through 351.) Some courts have held, however, that the right to appeal or contest the assessment obviates the necessity of notice. (See cases cited: 24 A. L. R. 336.)

Upon the hearing anew the district court has the right to affirm, reverse or modify, section 30–1111, I. C. A. Appellant may concede that without notice the court would have the right to affirm or reverse, but still insists that the district court might not increase the assessments. If notice by the board was mandatory, before the board could increase, it would seem that the lumber company would not be

put upon notice of any action the court might take on appeal except that authorized by statute. It is necessary therefore to determine whether the word "modify," would include an increase by the court or merely a reduction. The word "change" is frequently given as a synonym for modify. Webster's New International Dictionary, G. & C. Merriam Company (1921), defines "modify":

"1. To keep within bounds; limit; also, to mitigate, assuage. obs.

"2. To limit or reduce in extent or degree; to moderate; qualify; lower. He modifies his first severe decree. Dryden.

"3. To differentiate into, or diversify by, different forms; to vary;—now merged in sense 4.

"4. To change somewhat the form or qualities of; to alter somewhat as, to *modify* a contrivance adapted to some mechanical purpose; to modify the terms of a contract.

"5. In technical senses: a Scots Law. To award or decree as something to be done or paid, esp. the stipend of a parish minister. b. Gram. To limit or restrict the meaning of; to qualify. . . . . "

The New Standard Dictionary of the English Language, Funk & Wagnalls (1921), defines "modify":

"1. To make somewhat different; change more or less in character, properties, form, or application; limit or restrict; vary; as, to modify the details of a plan; local causes *modify* climate; adverbs *modify* verbs.

"2. To make more moderate or less sweeping; reduce in degree or extent; qualify; as, to modify a punishment. . . . . "

"To limit; moderate. . . . . " Oxford Eng. Dictionary.

While there is thus a slight thread running through the definitions to the effect that *modify* means to reduce rather than increase (40 C. J. 1487), such restrictive meaning has not generally been applied in . construing statutes of the kind herein and we believe the rather generally accepted meaning of the word *modify* in proceedings of this nature, i. e., taxation appeals, includes the element of "increasing." (*State v. Lincoln*, 133 Minn. 178, 158 N. W. 50; *Commission-*

*ers of Lucas County v. Commissioners of Fulton County,*
3 Ohio Dec. 159, 163; 61 C. J. 886.)

"The appeal was from the whole of the order of the
board of equalization and therefore the whole order was
before the court. Appellant could not confine the court
to correcting certain errors, but the court had the power
to correct all errors which the evidence disclosed." (*First
Nat. Bank v. Board of Commrs., supra.*)

The above procedural matters thus being disposed of,
there remains, consideration of the real gist of the lawsuit,
which involves a determination of the power and scope of
the county board, sitting as a board of equalization, and the
district court upon appeal therefrom.

The court's findings of fact and conclusions of law were:

"The above matter coming on for hearing in open court
upon the appeal from the order of the Board of County
Commissioners, sitting as a board of Equalization; the Mc-
Goldrick Lumber Company, a corporation, appearing by its
attorney, William D. Keeton, and by one of its officers, Mr.
R. C. Lammers; the defendant county appearing by Ed. S.
Elder, Prosecuting Attorney and N. D. Wernette, associate
counsel; both oral and documentary evidence was submitted
on the part of both parties and now, after considering the
same, the court makes the following findings of fact;—

"That in a great many instances the values as placed
upon the within tracts of land by the assessor were exces-
sive and wrong and, in other instances, the valuation placed
on the different tracts were not equal to the cash value
of said tracts.

"That the Board of County Commissioners, sitting as a
board of Equalization, should have found the correct valua-
tions of said tracts of land and made a correction of the
values for assessment purposes in accordance therewith.

"That, from the foregoing findings of fact, the court
makes the following conclusions of law;—

## "CONCLUSIONS OF LAW

"That the numerous tracts of land involved in this liti-
gation have been valued by the assessor for taxation pur-

poses and that in a great many instances the valuations placed upon the different tracts by the said assessor has been erroneous and that said erroneous assessments should be corrected."

and then ordered as follows:

"IT IS HEREBY ORDERED, ADJUDGED AND DE-CREED that the valuations of the timber lands, waste and cut over lands of the plaintiff herein, be and hereby are determined and fixed for assessment purposes as of the second Monday of January, 1932 as follows;—(Description and adjudged valuation set forth as to each specific piece of property)."

While respondents contend that appellant only complained of an overvaluation, and not of an unequal assessment or valuation compared with other similar lands, apparently appellant was urging both propositions, and also complains, that the findings were insufficient.

Section 61–402, I. C. A., requires the county board of equalization, to equalize all assessments within the county, on a full cash value basis and section 61–406, I. C. A., limits them to such equalizing function. In other words, the county boards are to determine whether the assessments have been made on a full cash value and whether all such assessments have been made on an equal basis throughout the county, and if so they are correct. If any of the property has been assessed too high or too low as compared with other assessments and its assessment is above or below the full cash value it must be increased or decreased by the board, as the case may be, to bring it in line with other property. If all of the property has been assessed above or below its full cash value, it must all be increased or decreased accordingly.

The county board of equalization has potentially before it all the property in the county for equalization purposes (sec. 61–322, I. C. A.; 61 C. J. 849, n. 67) ; the court on the other hand has before it for action only the property of the appealing party (61 C. J. 849, n. 68; *Eminence Distillery Co. v. Henry County Board of Suprs.*, 178 Ky. 811, 200 S. W. 347), hence its function is restricted to that of

equalizing and in the exercise of this duty may raise or lower the value theretofore placed on the property of the appealing party to bring it in line, if out of line, with the other property in the county. (61 C. J. 852; *Eminence Distillery Co. v. Henry County Board of Suprs., supra; Ex parte Ft. Smith & Van Buren Bridge Co.,* 62 Ark. 461, 36 S. W. 1060; *Randell v. City of Bridgeport,* 63 Conn. 321, 28 Atl. 523; *Greene v. Louisville & I. R. Co.,* 244 U. S. 499, 37 Sup. Ct. 673, 61 L. ed. 1280, Ann. Cas. 1917E, 88. See, also, *Taylor v. Louisville & N. R. Co.,* 88 Fed. 350, 31 .C. C. A. 537; *Central R. Co. of New Jersey v. Martin,* (C. C. A.) 65 Fed. (2d) 613; *Washington County v. First Nat. Bank,* 35 Ida. 438, 206 Pac. 1054.) In other words, if the property has been over or under assessed but is in line with all the other property in the county, the district court may not disturb the assessments. (*Eminence Distillery Co. v. Henry County Board of Suprs., supra.*) If it be urged that such procedure is unfair to the appealing taxpayer left with too high an assessment but comparable with all other assessments, all the property being on too high a basis the relief must come in the first instance from the county board of equalization, because as stated all parties are before it, while they are not before the court, and in addition it is sufficient to note relief is available from the state board of equalization since all the property in all the counties is before it. (Secs. 61–506 to 61–510, I. C. A.; *Des Moines Gas Co. v. Saverude,* 190 Iowa, 165, 180 N. W. 193.) If all the valuations are too high no injustice is done the individual since the rate adjusted accordingly will operate the same on all being reflected in the application of the general corresponding levy. Thus the court is limited by the nature of the proceeding before it, being an appeal by an individual or a limited group of individuals, to equalize his, its or their assessments, and bring them in line with the other assessments in the county but, because the other parties are not before it the court may not change their assessments. (*Eminence Distillery Co. v. Henry County Board of Suprs., supra.*)

The evidence before the board is of course not before us, nor was it as such before the district court. The equalized assessments made by the board were before the district court and are before us, as is also the testimony that was before the district court and the equalized assessments as made by it, and while we might conclude that the court by reducing some assessments and increasing others was merely bringing them in line, on a full cash value basis, with all other similar property in the county explicit findings should have been made. (*Bentley v. Kasisika,* 49 Ida. 416, 422, 288 Pac. 897, and cases cited.) In other words, the court should have found on what basis other property in the county was generally assessed and have found the general rate of assessment as made by the assessor and the board on the lands of the appellant, then if the assessments on the appellant's lands were too high or too low, as compared with the assessments on other property, not merely intrinsically too high or too low, the court should have determined whether, reductions or increases should have been made on the appellant's lands to bring them in line with the other assessments in the county and found and concluded accordingly.

The judgment is therefore reversed and the cause remanded with instructions to the court to make the findings above required and conclude accordingly, and further evidence may be received if the court desires.

Costs awarded to appellant.

Budge, C. J., Holden, J., and Johnson, D. J., concur.

Morgan, J., dissents.

Petition for rehearing denied.