(April 29, 1922.)

## WASHINGTON COUNTY, Appellant, v. FIRST NATIONAL BANK OF WEISER, Respondent.

[206 Pac. 1054.]

TAXATION—UNIFORMITY—DISCRIMINATION — RELIEF BY COURTS — EVIDENCE OF. VALUE—HEARSAY — RECITALS IN PRIVATE DEEDS — FEDERAL FARM LOANS—SUFFICIENCY OF EVIDENCE—VALUE OF BANK STOCK—DEDUCTION ON ACCOUNT OF OTHER PROPERTY ASSESSED TO BANK—INTENTIONAL AND SYSTEMATIC UNDERVALUATION OF OTHER PROPERTY—PROOF OF.

1.   Where certain property is assessed at a higher valuation than all other property, the court will enforce the requirement of uniformity by a reduction of the taxes on the property assessed at the higher valuation, if it be shown that the difference is the result not of mere error in judgment, but of fraud or of intentional and systematic discrimination.

2.   In an action to obtain a reduction of taxes, recitals of consideration in private deeds are not competent evidence of the value of the property.

Publisher's Note.

1.   Validity of tax as affected by valuation of other property at lower proportion of actual value, see notes in **Ann. Cas.** 1912B, 872; **Ann. Cas.** 1917E, 97.

3. In such a case federal farm loans on lands in certain amounts are competent evidence of the value of the lands, the law requiring that no loan shall be in an amount greater than 33⅓ per cent of the value.

4. In such a case it is not necessary for the plaintiff to prove directly that all the other property was undervalued for purpose of assessment. It is sufficient if he proves a reasonable number of representative cases from which that deduction may be drawn.

5. The deduction provided by C. S., sec. 3297, is that part of the capital stock invested in other property which is assessed in the name of the bank.

6. Whether the undervaluation of property for purposes of assessment by the tax officials' was intentional and systematic must be inferred from their acts.·

APPEAL from the District Court of the Seventh Judicial District, for Washington County. Hon. Ed. L. Bryan, Judge.

Action to obtain reduction of taxes. Judgment for petitioner. *Affirmed.*

Roy L. Black, Attorney General, Dean Driscoll, First Assistant, and Harrison McAdams, Prosecuting Attorney, for Appellant.

The requirement that all property be assessed at its actual cash value is secondary to the constitutional mandate of equality of taxation, so that where even though one individual's property be assessed at less than the full cash value, if other property generally be assessed at still less proportionately, the courts will enforce the requirement of uniformity by corresponding reduction of the property assessed at the higher valuation, provided always that mere undervaluation in itself is not sufficient ground for disturbing any assessment, but it must be shown that the discrepancy arises not by mere error in honest judgment of the assessing officer, but that it is the result of fraud or of intentional and systematic discrimination. (*Northern Pac. Ry. Co. v. Clearwater County,* 26 Ida. 455, 144 Pac. 1; *Humbird Lumber Co. v. Thompson,* 11 Ida. 614, 83 Pac. 941; *Washington Water*

*Power Co. v. Kootenai County,* 270 Fed. 369; *Coulter v. Louisville & Nashville Ry. Co.,* 196 U. S. 599, 25 Sup. Ct. 342, 49 L. ed. 615; *Chicago, B. & Q. Ry. Co. v. Babcock,* 204 U. S. 585, 27 Sup. Ct. 326, 51 L. ed. 636; *Greene v. Louisville & Interurban R. Co.,* 244 U. S. 499, Ann. Cas. 1917E, 88, 37 Sup. Ct. 673, 61 L. ed. 1280; *Louisville & Nashville Ry. Co. v. Greene,* 244 U. S. 522; Ann. Cas. 1917E, 97, 37 Sup. Ct. 683, 61 L. ed. 1291; *Illinois Cent. Ry. Co. v. Greene,* 244 U. S. 555, 37 Sup. Ct. 697, 61 L. ed. 1309.)

Evidence showing that two-thirds of the county's property was undervalued does not show that the remaining third, a large part of which was not assessed by the county assessor but was assessed by the state board of equalization, was undervalued and no relief could be granted as to the remaining third, but, on the contrary, it would have to be considered as having been assessed at its full cash value and proper allowance made in making reductions. (*Washington Water Power Co. v. Shoshone County,* 270 Fed. 377.)

Bank stock is to be assessed at its actual market value and not at its book value. . (C. S., secs. 3104, 3110, 3297.)

In making the deduction of real estate separately assessed in arriving at the valuation of bank stock for assessment, the valuation to be used is the valuation at which the real estate was separately assessed, and not the book value. (C. S., sec. 3297.)

Richard H. Johnson, Carey H. Nixon, Pasco B. Carter and A. C. Cherry, for Respondent.

The compilations of Mr. Crane and Mr. Smith, showing value of property in Washington county, were properly admitted. (*Burton v. Driggs,* 20 Wall. (U. S.) 125, 22 L. ed. 299; *San Pedro Lumber Co. v. Reynolds,* 121 Cal. 74, 53 Pac. 410.)

It is no defense that respondent's testimony as to value at which property was assessed did not include 100 per cent of the property in Washington county. (*Washington Water Power Co. v. Kootenai County,* 270 Fed. 369, 374;

*Greene v. Louisville & I. R. Co.,* 244 U. S. 499, 501, Ann. Cas. 1917E, 88, 37 Sup. Ct. 673, 61 L. ed. 1280; *Cummings v. Merchants' Nat. Bank,* 101 U. S. 153, 25 L. ed. 903.)

Courts will grant relief to a person or corporation whose property has been assessed at its full value, upon proof that other property in the county has been systematically assessed at a percentage of its full value. (*Taylor v. Louisville & N. R. Co.,* 88 Fed. 350, 31 C. C. A. 537; *Northern Pac. Ry. Co. v. Clearwater County,* 26 Ida. 455, 144 Pac. 1; *Ex parte Ft. Smith & Van Buren Bridge Co.,* 62 Ark. 461, 36 S. W. 1060; *Chicago & N. W. Ry. Co. v. Board of Suprs. of Boone County,* 44 Ill. 240; *Amoskeag Mfg. Co. v. City of Manchester,* 70 N. H. 200, 46 Atl. 470; *People v. Woodbury,* 74 Misc. Rep. 130, 145, 133 N. Y. Supp. 135; *People v. State Board of Tax Commissioners,* 134 N. Y. Supp. 987; *Railroad & Telephone Cos. v. Board of Equalizers,* 85 Fed. 302; *Nashville etc. Ry. v. Taylor,* 86 Fed. 168; *Southern R. Co. v. North Carolina Corp. Commission,* 104 Fed. 700; *Louisville & N. R. Co. v. Bosworth,* 230 Fed. 191; *Greene v. Louisville & I. R. Co.,* 244 U. S. 499, Ann. Cas. 1917E, 88, 37 Sup. Ct. 673, 61 L. ed. 1280.)

Such method of taxation is in violation of the 14th amendment to the U. S. Constitution. (*Sunday Lake Iron Co. v. Wakefield Township,* 247 U. S. 350, 38 Sup. Ct. 495, 62 L. ed. 1154; *People's Gas Light etc. Co. v. Stuckart,* 286 Ill. 164, 121 N. E. 629; *Druesdow v. Baker* (Tex. Com. App.), 229 S. W. 493; *Atchison T. & S. F. Ry. Co. v. Sullivan,* 173 Fed. 456, 97 C. C. A. 1.)

McCARTHY, J.—Respondent filed a petition with the board of county commissioners of Washington county sitting as a board of equalization stating that the full cash value of its capital stock in 1919 including surplus and undivided profits was $90,415.48; that 45,100 of its capital stock was invested in other property which had been separately assessed for said year; that the full cash value of the capital stock after deducting the part thereof invested in said other property was $45,315.48; that the assessor of said

county assessed said capital stock for said year at the said amount of $45,315.48, or at its full cash value after deducting the amount so invested in other property; that all other property in said county was, by a systematic, intentional and illegal undervaluation, assessed at 40 per cent of its full cash value. Respondent prayed that the assessment of its capital stock be modified and equalized by placing it on the same basis of valuation as that adopted in the assessment of the other property of the county. This application was denied by the board after a hearing. From this order respondent bank appealed to the district court for Washington county in accordance with the procedure outlined by C. S., secs. 3510, 3511 and 3512. After a hearing, said court found that the actual cash value of the capital stock, after deducting the amount invested in other assessable property, was $45,315.48, and that it was assessed at that amount; that all other property in said county was assessed, by a systematic and intentional undervaluation, at 50 per cent of its full cash value; that respondent in order to prevent the seizure and sale of its property had paid, under protest, the full amount of the tax levied against it, to wit, $2,284.60. The court concluded that the assessment of respondent's capital stock should be reduced by 50 per cent, that it should recover 50 per cent of the total tax paid under protest, and duly entered judgment to that effect. From this judgment Washington county appeals to this court. The following are the principal assignments of error and the only ones which need be considered: First, that the court erred in overruling appellant's objections to the introduction of certain evidence offered by respondent to prove that other property in the county was assessed at only 50 per cent of its cash value, to wit, plaintiff's exhibits "A" and "B," and the testimony of witnesses Crane and Smith, based thereon. Second, that the court erred in finding that the capital stock of said bank was assessed at its full cash value. Third, that the court erred in finding that all other property in said county was assessed by a

systematic and intentional undervaluation thereof at 50 per cent of its cash value.

C. S., sec. 3297, provides: "Sec. 3297.  The shares of capital stock of any bank, existing by authority of the United States or of this state and located within this state, or of any building and loan association, trust company or surety and fidelity company organized under the laws of this state and doing business within this state, shall be assessed for taxation where such bank, company, association or other corporation is located and not elsewhere, as in the same manner and upon the same basis of actual value, and uniformly with all other property assessed in the county in which such shares of capital stock are assessed, said value to be determined as of the second Monday of January in each year at 12 o'clock meridian: Provided, however, That no assessment shall be made on the part of such capital stock, or the surplus or undivided profits of such bank, company, association or other corporation which are at the time of assessment, actually invested in and represented by other property owned by and standing upon the records of the county wherein such shares of capital stock are assessed in the name of such bank, company, association or other corporation and which have been assessed and entered for taxation in said county for the said year, which part shall be deducted from the value, as determined in the above manner, of such shares of capital stock in listing such capital stock for assessment.  Any property so represented in such capital stock, on account of which a deduction has been made in the assessed valuation of the shares of such capital stock, shall be assessed separately at its full cash value, as other property."

Sec. 3097 provides: "All real and personal property subject to assessment and taxation must be assessed at its full cash value. . . . . "

Sec. 3104 provides: "Sec. 3104.  By the term 'value,' 'cash value,' or 'full cash value' is meant the value at which the property would be taken in payment of a just debt due from a solvent debtor, or the amount the property

would sell for at a voluntary sale made in the ordinary course of business, taken into consideration its earning power when put to the same uses to which property similarly situated is applied.''

Sec. 3110 provides: ''Sec. 3110. In ascertaining the value of any property the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation, nor shall he adopt as a criterion any value or price for which the property would sell at auction or at forced sale, or in the aggregate with all the property in the taxing district; nor, on the other hand, shall he adopt a speculative valuation, or one based upon sales made upon the basis of a small cash payment and instalments payable in the future, but he shall value each article or piece of property by itself and at such sum or price as he believes the same to be fairly worth in money at the time such assessment is made.''

Idaho Constitution, art. 7, sec. 5, provides: ''All taxes shall be uniform upon the same class of subjects within the territorial limits, of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal: . . . . ''

The requirement that all property be assessed at its actual cash value is secondary to the constitutional mandate of equality of taxation. Where certain property is assessed at a higher valuation than all other property, the court will enforce the requirement of uniformity by a reduction of the taxes on the property assessed at the higher valuation, if it be shown that the difference is the result not of mere error in judgment, but of fraud or of intentional and systematic discrimination. This action will be taken even though the reduction of the assessment will result in an assessment at less than cash value. This is done, not because the court approves the assessment of property at less than its cash value, but because, in such cases, it is the only practicable method of enforcing the constitutional right of the plaintiff. (*Northern Pac. Ry. Co. v. Clearwater County,* 26 Ida.

455, 144 Pac. 1; *Humbird Lumber Co. v. Thompson*, 11 Ida. 614, 83 Pac. 941; *Washington Water Power Co. v. Kootenai County*, 270 Fed. 369; *Coulter v. Louisville & Nashville Ry. Co.*, 196 U. S. 599, 25 Sup. Ct. 342, 49 L. ed. 615; *Chicago B. & Q. Ry. Co. v. Babcock*, 204 U. S. 585, 27 Sup. Ct. 326, 51 L. ed. 636; *Greene v. Louisville & Interurban R. Co.*, 244 U. S. 499, Ann. Cas. 1917E, 88, 37 Sup. Ct. 673, 61 L. ed. 1280; *Louisville & Nashville Ry. Co. v. Greene*, 244 U. S. 522, Ann. Cas. 1917E, 97, 37 Sup. Ct. 683, 61 L. ed. 1291; *Illinois Cent. Ry. Co. v. Greene*, 244 U. S. 555, 37 Sup. Ct. 697, 61 L. ed. 1309.)

We first turn to appellant's specification of error based on the introduction of certain evidence as to the value of other property in the county. Witness Crane examined the county records and prepared a table showing the consideration named in 45 deeds to farm property which passed during the year 1919, and the amounts of federal farm loans, as shown by 48 mortgages during that year. Basing his finding on this data and on the assessed valuation, he found that agricultural lands were assessed at 34 per cent of their cash value. Witness Smith examined the county records and prepared a table showing the consideration named in 45 deeds to farm and town property which passed during the year 1919. Comparing the consideration named in these deeds with the assessed valuation he found that agricultural and town property were assessed at 31 per cent of their cash value. Appellant objected to this evidence on the ground that it was based on hearsay, because the statements in the deeds and the mortgages were hearsay statements. Were the statements of consideration in the deeds competent evidence? Respondent contends that they were admissible on the ground of necessity under an exception to the hearsay rule. Such evidence was held admissible in a decision of the U. S. district court for Idaho in the case of *Washington Water Power Co. v. Kootenai County et al.*, Judge Dietrich saying: "It would, of course, be impracticable for the complaining taxpayer to produce direct evidence of the value

of each specific item of taxable property in the state. The task would be endless and the expense prohibitive.''

Respondent contends that the statement of consideration in a deed can be relied on as fair proof of the actual value of the property. In relaxing the strict rules of evidence, by way of exception to the hearsay rule, in order to meet the needs of particular cases, the courts have always applied two tests, first, was the declarant possessed of sufficient knowledge to make his statement reliable, and, secondly, was he free from any motive to misrepresent. (4 Chamberlayne on Evidence, secs. 2773, 2792, 2798.) Let us apply these tests to the recitals of consideration in the deeds. It must be conceded that the grantor and grantee knew the true consideration. It is not at all clear, however, that they were free from a motive to misrepresent. They were under no duty to speak the truth in this regard. It is a matter of common knowledge that frequently an amount greater than the actual consideration is stated in order to make the property appear of greater value than it is. This objection is not offset by the fact that revenue stamps had to be used, because overstating the consideration would be no violation of the law. We conclude that the recital of consideration in a deed does not carry with it such a presumption of verity or reliability as will justify admitting it, by way of exception to the hearsay rule, as proof of value; that the deeds were not proper evidence of the value of the lands, and the testimony of the witnesses, so far as based upon these deeds, was not admissible.

We turn now to the evidence as to the federal farm loans. It appears from the record that the government rule is that the amount loaned shall not exceed 33⅓ per cent of the actual value of the property. The witness Crane examined 48 such loans and concluded that the value of each piece of property was at least three times the amount loaned. Accepting this as the value of the property and comparing it with the assessed valuation, he found that the latter was 34 per cent of the former. Those who appraise the land

and those who make the loans are officers, sworn to do their duty. It is a fair presumption that they examined the property, were possessed of sufficient knowledge to pass accurately upon its value, and fairly appraise it. Applying the second test we conclude that they had no motive to misrepresent. On the contrary, their official duty would offer a sufficiently strong motive to place a correct valuation upon the property. Conceding that it would be impracticable for the taxpayer to produce direct evidence of the value of each specific piece of property, and that the ordinary rules of evidence should be somewhat relaxed in such a case, we conclude that a sufficiently strong presumption of verity and reliability attaches to the acts of the officials in making the loans to warrant admitting in evidence the mortgages in question and the testimony of witness Crane based thereon. No evidence was offered to rebut this presumption.

Disregarding the deeds and the evidence based thereon, we conclude that there was sufficient other evidence to support the finding of the court that the other property in the county was assessed for 1919 at 50 per cent of its full cash value.

Appellant objects that it was not shown that all of the property was undervalued, that the proof covered only 67.26 per cent of all the property in the county. It was not necessary to produce direct evidence of the value of all the taxable property.

"Deductions may safely and confidently be drawn from a reasonable number of typical and representative cases all pointing to the same end." (Opinion of Judge Dietrich in *Washington Water Power Co. v. Kootenai County, supra,* same case in Cir. Ct. of App., 270 Fed. 369.) Sufficient evidence was produced to justify the finding of the court in this regard.

Another point made by appellant is that the evidence does not show the bank stock was assessed at its cash value. It was divided into 1,500 shares of the par value of $50

each, or a total of $75,000. The amount of surplus and undivided profits of the bank in 1919 was $15,415.48. Respondent contends and the court found that the full cash value of the capital stock of the bank was the par value of $75,000 plus the amount of surplus and undivided profits, or $90,415.48. The value of the real estate in which part of the capital stock was invested was $45,100 and the bank stock was assessed for the difference between $90,415.48 and $45,100 or $45,315.48. There is some evidence that small blocks of the stock were bought in a few instances by parties holding official positions with the bank, and desiring to obtain control, at prices which, if considered the fair market value of the stock, would make it worth more than $9,415.48. The trial court correctly concluded that the price paid in these few isolated sales was not a fair measure of the actual cash value. There was no evidence that the stock had a general market value. We conclude that the evidence supports the finding of the court that the bank stock was assessed at its full cash value.

Appellant's next objection is that under C. S., sec. 3297, the amount deducted on account of that part of the capital stock invested in other property assessed in the name of the bank should have been the assessed valuation of such property. The language used in the statute does not bear such an interpretation. The amount deducted should be that part of the capital stock invested in such other property, and this was done.

Appellant also contends that the evidence is insufficient to show that the undervaluation of the other property in the county was intentional and systematic rather than a mere error of judgment. The intent of the taxing officials must be inferred from their acts. The only reasonable inference which can be drawn from the evidence is that their undervaluation of the other property was intentional and systematic.

We do not think it necessary to specifically notice other assignments of error. Suffice it to say none of them

furnish grounds for reversing the judgment. The judgment is affirmed, with costs to respondent.

Lee, J., concurs.

DUNN, J.—I concur in the foregoing opinion except as to the admissibility of evidence of federal farm loans.